## SULLIVAN v. INDUSTRIAL COMMISSION et al.

No. 5461.   Decided December 4, 1933.   (27 P. [2d] 443.)

*R. A. Porter,* of Payson, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendants.

MOFFAT, J.

On February 2, 1928, Robert F. Sullivan was employed by the Mammoth Mining Company, and on that day was injured by accident in the course of his employment. The compensation insurance carrier is the State Insurance Fund. The accident was the result of a cave-in, or some rock and earth falling upon him, causing a compression fracture of the first, second, and third lumbar vertebrae, with severance of the spinal cord, resulting in a complete paralysis of both lower extremities and partial paralysis of bowel and bladder functions.

Upon the hearing for compensation, it was admitted by the insurance carrier, the State Insurance Fund, and found by the Industrial Commission, that Sullivan was totally and permanently disabled.

The State Insurance Fund has paid him compensation for the first 5 years at the rate of $16 per week, and since the expiration of the 5-year period at the rate of $13.65 per week, being the maximum allowance under the statute, Rev. Stats. Utah 1933, 42-1-63.

In addition to the compensation, the State Insurance Fund has also paid for medicines, appliances, medical, hospital, and nursing services a total sum of $12,725.61, itemized as medical, $2,090.91, hospital, $9,534.70, nursing services, $1,170. For a period of about 182 weeks Sullivan was

cared for in various hospitals. Then arrangements were made with the wife of the injured man to care for him in a home where she and their two small children lived. The commission caused to be paid to the wife for the nursing service the sum of $15 per week, and in addition thereto, furnished the necessary absorbent cotton, gauze, alcohol, bandages, padding, and medicines.

On December 6, 1932, the State Insurance Fund, by its claim adjuster, advised the Industrial Commission of the amounts and the purposes for which the sums were paid in the matter of the injury compensation and expense of Robert F. Sullivan, and asked advice from the Industrial Commission as to whether or not the allowance in the way of hospital, nurse, doctor bills, drugs, and supplies could be legally continued after the expiration of the 5-year period, or whether the payment of medical, nursing, and other items of expense other than the reduced compensation must be reduced or eliminated.

The record does not disclose the notice to Sullivan that his allowance for medicines, nursing supplies, and care expenses would be discontinued, but his letter and application under date of January 24, 1933, indicates that he had received such information, and application was thereupon made to the Industrial Commission requesting a hearing on the question of whether he was entitled to additional medical service to be paid for by the State Insurance Fund. A hearing was had by the Industrial Commission on the 17th day of April, 1933, at Payson, Utah, where applicant resides; it being impossible or at least a burdensome inconvenience to remove the applicant to another place. The applicant at the time of the hearing was bedridden. On May 19, 1933, the Industrial Commission ordered that applicant's petition for additional medical expense as hereinafter set forth in full be denied. An application for rehearing was duly made, and on June 14, 1933, was denied by the Industrial Commission. The matter was then brought to this court upon petition for a writ of review.

The Industrial Commission made no findings. Findings are often helpful on review. The commission, however, is not required to make findings.

The resolution denying the petition for additional medical expense is as follows, omitting the caption, references, and parties:

"Whereas, Robert F. Sullivan of Payson, Utah, who sustained injuries by accident on February 2nd, 1928, while employed by the Mammoth Mining Company and which injuries have resulted in rendering the said Robert F. Sullivan premanently and totally disabled; and

"Whereas, the State Insurance Fund, as insurance carrier, assumed liability and has paid weekly compensation as by law provided from within three days of the date of said injury, up to the present time, and is still paying said compensation; and

"Whereas, the State Insurance Fund, in addition to the weekly compensation paid, has paid for medical and hospital service the following items:

Medical .......................................$2,090.91
Hospital ....................................... 9,534.70
Paid to applicant's wife as compensation for care of
.applicant .................................... 1,170.00; and

"Whereas, it appears to the Commission that the State Insurance Fund should not be required to pay further and additional medical expense; Now, Therefore,

"Be it resolved and ordered, that the petition of the applicant for additional medical expense be, and the same is hereby denied."

The record shows without dispute or contradiction that from the date of the injury heretofore referred to there has been a complete loss of sensation and motion of the lower extremities, also complete loss of control of the bowel and bladder elimination functions; that there has been no improvement, nor is any expected; that the applicant will be bedridden the rest of his life, that the treatment consists simply of keeping him clean and attending to his general hygiene. The record on the recent hearing shows that applicant does not have any knowledge of or control over his bowel, kidney, or bladder movements. Whatever occurs in relation to these organs does not pass the threshold of consciousness.

The applicant has no property or means other than received from the compensation. The home occupied by applicant, his wife, and two children is occupied under a $1,500 contract of purchase, upon which there has been paid only the sum of $100, and, in addition thereto, some other small items of indebtedness exist, with no possible sources of income to meet them.

It is shown by the record that constant nursing and occasional medical attention with proper absorptive and antiseptic supplies are required, otherwise constantly threatening infection and deterioration processes are sure to set in. Daily or oftener dressings and washings are necessary. There has been no substantial change in applicant's condition from the time of the injury to the date of the hearing, and none is expected. And, since the allowance for nursing and medical supplies has been cut off, bills contracted for them have not been paid.

Whatever is to be done or can be done, if anything, by the Industrial Commission, must be done in pursuance and under the provisions of Rev. Stats. Utah 1933, 42-1-75, Id., Laws of Utah 1921, § 3147, pp. 165, 180. That section reads:

"In addition to the compensation provided for in this title the employer or insurance carrier, or the commission out of the state insurance fund, shall in ordinary cases also be required to pay such a reasonable sum for medical, nurse and hospital services, and for medicines, and for such artificial means and appliances as may be necessary to treat the patient as in the judgment of the commission may be just, not exceeding the sum of $500; provided, that if upon application to and investigation by the commission it shall find that in particular cases such an amount is insufficient, the commission shall determine and fix such a reasonable amount as under all the circumstances may be fair and just. * * *"

From the record and the statute a number of very definite things appear and about which there does not appear to be any controversy, nor, indeed, do we see how there can be. Among them are: First, the statute contemplates two types of cases wherein the commission is authorized and required to pay "for medical, nurse and

hospital services and for medicines, and for artificial means and appliances as may be necessary to treat the patient," (a) "ordinary cases," and (b) "particular cases"; second, that in "ordinary cases" the commission is required to pay, or require to be paid, "a reasonable sum," "not exceeding the sum of $500.00"; third, that "in particular cases," if the sum of $500, upon application and investigation by the commission, is found to be insufficient, the commission shall then "fix such a reasonable amount as under all the circumstances may be fair and just"; fourth, that the instant case is not an "ordinary case," but, on the other hand, is a particular case, a case certainly out of the ordinary; fifth, that an application has been duly and regularly made; and, sixth, that a hearing has been had thereon and an order made.

The commission has made no finding of a specific character that appears in the record giving this case a classification as ordinary or otherwise; but the record does disclose in the most emphatic manner that the case is not an ordinary case. The payments that have been made, the services, hospitalization, and treatment furnished, the medicines, appliances, and accessories supplied, testify most impressively as to the type of the case. Without question all these payments, furnishings, and services have been made upon the basis of the case coming within the terms of the statute as a particular case, one out of the ordinary—an extraordinary case. The record discloses affirmatively, and without contradiction or question, that the condition and needs of the applicant have not changed. Why then the change? Why, under such circumstances, should the applicant be cut off entirely?

We think the answers to those questions are found in the statements made by the commission in communications antedating by some time the hearing on the case, which communications we think show a misinterpretation of the law—an error as to the law to be applied to particular cases, and especially a misapplication of the principles discussed

and the effect of the decision reached in a former case decided by this court. *Carbon Fuel Co.* v. *Indus. Com.,* 17 P. (2d) 215.

We find in the record two letters from the commission addressed to counsel for applicant. The first is dated March 16, 1933, and the second March 22, 1933. The following excerpts from the letters in the order of their dates reflect the position taken by the commission in the matter being considered: In the letter of March 16th we find the following:

"The sum of $12,795.61 has been paid out in medical expense. This within a period of five years. Had it not been for a decision of the Supreme Court, handed down recently, it is possible that additional medical expense would have been paid and no question raised. As you are lawyers, we are sure you will not criticise this Commission for following the mandates of our Supreme Court.

"The case referred to is entitled Carbon Fuel Company and United State Fidelity & Guaranty Company v. Industrial Commission of Utah and A. G. Pappas [17 P. (2d) 215]. This case has not yet been reported [in State Report]. It involved the right of the applicant to receive medical (allowance) in excess of $500.00 and, while it is not on all fours with the Robert Sullivan case, certain excerpts from that Decision are applicable and must be considered by the Commission in all future question(s) where medical costs incurred have equalled or exceeded the statuory sum of $500.00. as, for example, the court said:

" '* * * The Commission shall take into consideration the interests of the employer and its insurance carrier as well as that of the employe.'

" '* * * The amount that an employer or an insurance carrier shall be required to pay for medical treatment *is not necessarily the actual cost of such treatment.'*

"In discussing the matters that must be taken into consideration by the Commission where application is made for medical expense in excess of $500.00, are the following:

"1st. The nature and extent of the proposed treatment.

"2nd. The amount of relief that the injured employe will probably receive from the proposed treatment.

"3rd. The amount of liability, if any, which the employer or insurance carrier will be relieved from paying as compensation as the result of the proposed treatment.

"4th. The amount that employer or insurance carrier has already paid for medical treatment."

## A further excerpt from this decision reads as follows:

" 'It is easy to conceive of a state of facts where the employer or its insurance carrier may justly be required to pay *part of the costs* of additional medical treatment of an injured employe, but *it would be clearly unjust to cast the entire burden of such treatment upon the employer or its insurance carrier.'*

"The last excerpt, and particularly the first underscored [italicized] phrase, is suggestive of the court's attitude in the matter. We regret that this decision was ever made, but having been made, it is the law and, as the law, it places limitations upon this Commission in the exercise of *its authority over medical expenditures.*"

## And in the letter of March 22d we find:

"The excerpts quoted from the Supreme Court Decision, which was referred to, should not be construed as reflecting the attitude of this Commission, or any member thereof. We had an entirely different theory of the law, and personally think the Court's ruling cruel and inconsistent with the intent and purpose of a real Workmen's Compensation Act."

It is nowhere suggested that the applicant does not come within the particular case contemplated by the statute, or that there is not need for the requested relief or that the statute does not provide for such relief; but, by a process of interpretation by the Industrial Commission of a decision of the Supreme Court, a limitation has been imposed, thought not to be in harmony with the Compensation Act. On the contrary, the commission, speaking either personally or officially, regrets that the decision was ever made. This makes it necessary to examine the decision for the purpose of determining whether the court, by the decision in the case of *Carbon Fuel Co. et al.* v. *Industrial Comm. et al.* (Utah) 17 P. (2d) 215, 216, has laid down such a rule as required the rejection of applicant's claim as a matter of law. No other ground would seem to support such position. The regrets of the commission would seem to indicate that, un-

less such was the limitation imposed, that allowance should be made.

For the sake of brevity, we shall hereinafter refer to the case of *Carbon Fuel Company* v. *Industrial Comm.*, supra, as the Pappas Case. Mr. Pappas had been injured. Compensation had been allowed. The insurance carrier had continued to pay compensation as suggested by the commission. Mr. Pappas desired to secure the services of a doctor of his own choosing to give him further medical treatment. A medical advisory committee had appeared before the commission and had given as their opinion that Mr. Pappas was totally disabled, and in their opinion he could not enter competitive employment. The matter was brought to the attention of the insurance carrier by the commission. The insurance carrier in the Pappas Case took the position that from the medical advice furnished it, "further operative procedure will not in any way benefit this patient to any great extent, but before passing any opinion in regard to * * * treatment, we would like to have a written report from Dr. Pugh [applicant's personal physician], stating definitely what he intends to do and what results he expects to obtain after treatment."

Some treatment was had by Mr. Pappas and paid for by him. He applied for reimbursement. This was ultimately denied. Mr. Pappas then applied for further surgical and medical treatment to be paid for by the insurance carrier. A hearing was had. Upon conclusion of the hearing, the Industrial Commission made an order directing that the insurance carrier "furnish additional medical and hospital treatment to the applicant A. G. Pappas, and to pay for said treatment as by law provided, it being understood the Industrial Commission of Utah is not ordering or making it mandatory on the part of the applicant to submit himself to further treatment; that in case he voluntarily determined to submit to further surgical treatment, that the defendant employer, and/or insurance company be and they are hereby ordered to proceed as herein provided." That order was at-

tacked. It was by this court set aside, fundamentally because it failed to "fix such a reasonable amount as under all the circumstances" would be fair and just, or any specific sum whatsoever, the court saying:

"The order fails to determine and fix the amount, or any amount, which the employer or its insurance carrier may be required to pay for further medical treatment of Mr. Pappas. In such respect the order does not comply with the provisions of the Industrial Act, and therefore it should be, and accordingly it is, annulled."

It is manifest that this court in the Pappas Case decided, not that the Industrial Commission did not have power, nor that the law did not authorize the payment in particular cases of a reasonable amount for medical, nurse, and hospital services, etc.; but that the commission had failed to fix any amount at all from which it could be determined whether or not it was reasonable.

Digressing for the moment, it would seem clear that the fixing of such amount as under all the circumstances may be fair and just, after hearing and determining, in the particular case, that the maximum allowance in ordinary cases is insufficient, is precisely what the statute provides and what the court indicated in the Pappas Case. The court in the Pappas Case further said:

"In conferring authority upon the commission to grant an amount in excess of $500 for the medical treatment of an injured employee the Legislature did not fix as the sole basis for the award the sum that should be expended in receiving medical treatment, but, on the contrary, conferred upon the commission authority to determine and fix such reasonable amount as under all the circumstances shall be fair and just."

The opinion further says:

"When the investigation is completed, the commission is by the act *required to determine and fix a reasonable amount* as under all the circumstances shall be fair and just." (Italics added.)

The opinion in the Pappas Case then proceeds to discuss some of the factors or circumstances that should be taken into consideration by the Commission as aids in arriving at,

determining, and fixing a reasonable amount to be allowed under all the circumstances. Among those circumstances the court suggests for consideration some matters that would likely have a bearing—neither limiting the consideration nor excluding others—that might be pertinent or necessary to consider, and the court suggests the four items referred to in the letter of the commission to counsel under date of March 16, 1933, supra. It is not necessary to repeat them.

The order in the instant case being based upon a misinterpretation of the law as heretofore and now declared by the court is therefore erroneous. The commission under the statute is required upon application and after investigation by it to ascertain and find whether or not the case is an ordinary case. If the commission, taking into consideration all the circumstances, finds the case to be "particular" or extraordinary, and that, further taking into consideration all the circumstances in the particular case, the maximum allowance is not sufficient, the commission is then required to "determine and fix such a reasonable amount as under all the circumstances shall be fair and just."

As heretofore indicated, the order, being erroneous as a matter of law, it is hereby set aside, and the case is remanded to the commission to take such further proceedings as may be proper in the premises.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.