## BUCKINGHAM TRANSP. CO. v. INDUSTRIAL COMMISSION et al.

No. 5793.   Decided October 25, 1937.   (72 P. [2d] 1077.)

344

*J. M. Carlson*, of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., for defendants.

HANSON, Justice.

Plaintiff has brought before us for review an award made by the Industrial Commission of Utah in favor of Melvin Jack Kennedy and against plaintiff for injuries and disability arising out of an accident occurring while Kennedy was in plaintiff's employ. There are no disputed facts. Kennedy, while a resident of Colorado, was employed at Denver, Colo., by plaintif, a Colorado corporation, as a truck driver. There is no evidence, however, that he ever performed services for plaintiff in that state. Plaintiff maintained an office at Salt Lake City, Utah, to which place Kennedy was sent by plaintiff to drive one of its trucks in hauling freight between Salt Lake City, Utah, and Rawlins, Wyo. Apparently Salt Lake City was his headquarters as it was there he resided and it was from that office that he was paid. On February 28, 1935, while driving to Salt Lake City with a load of freight picked up at Rawlins, Kennedy was injured at Morgan, Utah. The plaintiff had not provided workmen's compensation insurance as prescribed by the Utah law. Kennedy filed an application for compensation with the Utah Industrial Commission and was granted an award. The proceedings before the commission, in so far as they affect the questions before us, will be referred to as we proceed to dispose of those questions.

Kennedy's application for compensation is based upon section 42-1-55, R. S. Utah 1933, which permits an injured employe to apply for and obtain an award of compensation where the employer, otherwise subject to the Compensation Act, has failed to comply with its provisions. Such award may be docketed in the district court and then becomes a lien upon the real estate of the employer situated in the county where the award is docketed.

The several grounds upon which plaintiff relies for vacating the award now urged upon us may be summarized as follows: (1) The Industrial Commission of Utah had no jurisdiction over plaintiff. (2) Said commission had no jurisdiction to award compensation because our Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.) does not apply to foreign corporations engaged exclusively in interstate commerce. (3) There is no evidence to support the commission's findings as to the amount of the hospital and nursing bills and the bill of one of the doctors; that there is no evidence to show such services were necessarily rendered or the amounts awarded were reasonable. (4) There was no evidence to support a finding that plaintiff has three or more workmen in its employ in Utah. (5) There was no evidence to support the conclusion of the commission that plaintiff should pay in full all medical and hospital expenses and nursing fees. (6) The commission exceeded its powers in: (a) Awarding medical, hospital, and nursing fees in excess of the maximum provided by law without an application having been made for such an award and without taking evidence that said sums were necessary and reasonable. (b) Making an award without giving credit for compensation voluntarily paid. (c) Making an award under a relationship of employment created and existing under the laws of Colorado.

To arrive at a correct and intelligent solution of the jurisdictional question thus presented to us for disposition, we first must come to an understanding of the basic principle underlying our Workmen's Compensation Act and upon which the fundamental purposes of that act are predicated. An examination of the cases construing and applying Workmen's Compensation Acts in many of the states shows that their interpretations and application have been controlled by a consideration of whether the particular act was by its terms to be effective as a matter of contract; whether the acceptance of the provisions of the act was elective or compulsory. It is manifest that in a given situation different

results would be arrived at, depending upon which interpretation was adopted and applied. It is only natural, therefore, that considerable confusion exists in the authorities involving the jurisdiction of the Industrial Commission or courts of one state over the relation of employer and employee arising from a contract of employment entered into in another state. We deem it unnecessary to discuss or analyze the various cases illustrative of the statutory interpretation and application above referred to. Many such cases may be found reported and referred to under the following annotations: 3 A. L. R. 1351; 18 A. L. R. 292; 28 A. L. R. 1345; 35 A. L. R. 1414; 59 A. L. R. 735; 82 A. L. R. 709; and 90 A. L. R. 119.

Referring specifically to our own Workmen's Compensation Act, it is apparent that from its original passage in 1917 it was intended to be operative by virtue of the status of employer and employee, and not upon the theory of contract, express or implied, between the employer and employee. *Chandler* v. *Industrial Commission,* 55 Utah 213, 184 P. 1020, 8 A. L. R. 930; *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532. In the Parramore Case, which involved our Workmen's Compensation Act, Mr. Justice Sutherland uses this language:

"Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

The right of the state to thus regulate the status of employer and employee is predicated upon the "police powers inherent in every sovereignty—the power to legislate and govern for the best interests of the

state." *Utah Fuel Co.* v. *Industrial Comm.*, 57 Utah 246, 194 P. 122, 124. That right was fully recognized by the United States Supreme Court in the case of *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642.

The Workmen's Compensation Act of Arizona was originally of the contractual type. In 1925 a new act was passed which, in its essential features, is practically identical with ours. In the case of *Ocean Accident & Guarantee Corp.* v. *Industrial Comm. of Arizona,* 32 Ariz. 275, 257 P. 644, 646, the Supreme Court of that state construed the new act and came to the conclusion that such act "is neither elective nor contractual in its nature, but, on the contrary, that it rests upon the police power to regulate the status of employer and employee within the state of Arizona, and that no contract, express or implied, made within or without the state of Arizona, unless expressly so authorized by our law, can of itself affect the rights and duties of such status."

Plaintiff's position that the Utah Industrial Commission had no jurisdiction to enter the award it did is based upon three grounds. It is first contended that the commission did not acquire jurisdiction over the person of the plaintiff. The record shows that written notice of the filing of Kennedy's application for compensation and the time fixed for the hearing thereon was given to plaintiff by registered mail addressed to plaintiff's president and to its process agent appointed by it in this state. It is argued that such notices were ineffective to give jurisdiction as they were mailed to and received in Denver, Colo. Plaintiff's counsel and process agent appeared in response to said notices. Counsel stated he appeared specially to make some objections to the proceedings. Before making any objections, he stipulated that plaintiff, on the date of the accident, had three or more workmen in its employ and that it had not procured workmen's compensation insurance to cover its employees in Utah. On the question of Kennedy's earnings, the process agent admitted he was earning a little more

than $100 a month, but would not agree he was making $11 a trip. The commission had the record show that plaintiff "is contesting the salary of $125.00 per month," and then inquired if the parties were ready to proceed. Counsel for plaintiff then objected to the proceedings "for the reason that the Industrial Commission of Utah has no jurisdiction over the matter; and for the reason that the plaintiff was engaged in interstate commerce exclusively and that at the time this man Kennedy was injured he was engaged in interstate business transporting from Colorado through Wyoming and Utah to Nevada and California, and on this particular trip it was interstate business exclusively; that the provisions of our Compensation Law itself, more particularly title 42, chapter 1, section 89 provides that this Commission does not have jurisdiction over parties engaged in interstate business or commerce, and that business of course is such that it is not segregated." Upon this objection being made there was some discussion as to whether a federal compensation act applied at the time of the accident. The presiding commissioner concluded that there was none and ruled that section 42-1-89, R. S. Utah 1933, applied only to common carriers. Counsel took an exception to the ruling so made. Thereupon the testimony of Kennedy and his physician was taken. Counsel for plaintiff cross-examined Kennedy. When the question as to the amount of the hospital bill incurred by Kennedy arose, the commissioner, after having called the hospital on the 'phone with the consent of plaintiff's counsel, inquired if there was any objection, upon receipt of the itemized bill from the hospital, to have it made a part of the record to be considered as evidence. Counsel for plaintiff replied: "No, I think not unless there is some item of payment, after I peruse it, that ought to show on there that is not shown."

The commissioner replied: "When we get the bill I will call you up about it." Counsel for plaintiff then said, "All right." Plaintiff declined to give evidence and stated it was willing

to submit the case on the record as made, including its objection to the commission's jurisdiction.

We have thus stated the proceedings in detail so that the reader may have before him the facts rather than a mere statement of our conclusions of the facts. Nowhere in the record is there any allusion of any kind to a want of jurisdiction over the person of the plaintiff by reason of the fact that the notices of the hearing were mailed to addresses and received outside the state. The only objection to the jurisdiction of the commission over the person of the plaintiff was based upon the contention that under section 42-1-89, jurisdiction could not be obtained over persons engaged exclusively in interstate commerce. An objection that the commission had no jurisdiction "over the matter" could hardly be said to be an objection to the jurisdiction of the person of plaintiff. Further, the proceeding before the commission did not call for the filing of any written pleadings by plaintiff in answer to Kennedy's application for compensation and none were filed. Whether plaintiff had submitted itself to the commission's jurisdiction could be determined, therefore, only by what took place at the hearing. The proceedings, as above outlined, show a participation therein by plaintiff which is wholly inconsistent with a mere special appearance made solely for the purpose of objecting to the exercise of jurisdiction over the person because notice had been served outside the state. We think by such participation in the proceedings, plaintiff in effect entered a general appearance and cannot now claim the commission had no jurisdiction of its person. The case of *McKesson-Fuller-Morrison Co.* v. *Industrial Comm.*, 212 Wis. 507, 250 N. W. 396, 397, involved a somewhat similar situation and the court there concluded that lack of jurisdiction was waived, stating:

"Where the party interested intends to rely upon a lack of jurisdiction, it should refrain from appearing generally and participating in the proceedings, thus giving the Industrial Commission an opportunity to take the steps necessary to perfect its jurisdiction."

By what we have said, we do not wish to be understood as holding that jurisdiction of the person of plaintiff was not acquired by the service of the notices as made or that a notice of the hearing must be considered in the nature of process and governed as to its service within or without the boundaries of this state by the law regulating the service of process generally. On that question we think it unnecessary to express an opinion.

Plaintiff next contends that because it was a Colorado corporation engaged in interstate commerce and Kennedy, when injured, was engaged directly in such commerce, the Utah Compensation Act does not apply to him or to plaintiff. Plaintiff relies upon section 42-1-89, R. S. 1933, which reads as follows:

"The provisions of this title shall apply to employers and their employees engaged in intrastate and also in interstate and foreign commerce for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce."

This section of our statutes has been construed by this court adversely to the contention made by plaintiff. In the case of *Denver & R. G. W. R. Co.* v. *Industrial Comm.*, 60 Utah 95, 206 P. 1103, it was held that, when the above section was construed in the light of the evident purpose of our Compensation Act to protect all workmen except those expressly excluded, said section only excluded those workmen who came within the Federal Employers' Liability Act (45 U. S. C. A. § 51 et seq.). In *State* v. *American Express Co.*, 57 Utah 405, 195 P. 312, an award of the Industrial Commission was upheld although the employer was engaged in interstate commerce, since such employer was not within the Federal Employers' Liability Act. Our act, therefore, covers Kennedy and the plaintiff although they were engaged in interstate commerce unless some federal enactment is

applicable to them. In *Hall* v. *Industrial Comm.*, 131 Ohio St. 416, 3 N. E. (2d) 367, 370, the court says:

"The consensus of authority seems to be that a state may provide compensation to one engaged in interstate commerce so long as the Congress of the United States, acting under its constitutional power to regulate commerce among the states, has not pre-empted the field." (Citing authorities)

Since the Motor Carrier Act passed by Congress in 1935 (49 U. S. C. A. §§ 301-327) did not become effective until several months after Kennedy sustained his injuries, we need not determine the effect of that act. That act could not serve to divest Kennedy of the right to compensation accruing before its effective date. *Ben Wolf Truck Lines* v. *Bailey* (Ind. App.) 1 N. E. (2d) 660.

Plaintiff's third contention is that since it and Kennedy were engaged in interstate commerce, the laws of Colorado, where the contract of employment was made, govern the remedies to which Kennedy may be entitled. Plaintiff cites and relies upon section 42-1-52, R. S. 1933, which reads:

"If a workman who has been hired in this state receives personal injury by accident arising out of or in the course of such employment, he shall be entitled to compensation according to the law of this state, even though such injury was received outside of this state. If a workman who has been hired outside of this state is injured while engaged in his employer's business and is entitled to compensation for such injury under the law of the state where he was hired he shall be entitled to enforce his rights against his employer in the courts of this state."

As already shown, the fact that plaintiff and Kennedy were engaged in interstate commerce at the time of the accident did not prevent them from being subject to our Compensation Act. Our law being applicable, it was the duty of our Industrial Commission to enforce its provisions unless, because of comity, it was bound to give effect to the Colorado law. We have examined a great many cases in

which the rule of comity was applied, but have found no cases which hold that such rule applied merely because the parties were engaged in interstate commerce. That rule becomes effective by virtue of conflict between the law of the forum and the law of the place of employment when the latter law becomes a material element in the rights sought to be enforced.

We have already shown that our act is one affecting the status of employer and employee and is in nowise dependent upon the provisions of the contract of employment for its operation. The right of Kennedy to recover compensation did not depend upon reading into his contract of employment the law of Colorado where that contract was made. The state of Utah has seen fit, under its police power, to regulate the status of employer and employee, with certain exceptions not material here, where that relation is sustained within this state. That the relation of employer and employee existed between plaintiff and Kennedy in this state is clear. Plaintiff had become localized within this state at the time the accident happened. It maintained an office here through which Kennedy was paid. It had been authorized to do business in this state. Kennedy's duties required him to haul freight in this state. It seems apparent that, as to the work done in Utah, plaintiff was as much subject to the laws of this state as if it had been incorporated here. When plaintiff sent Kennedy into this state to work for it here, it put him and itself within the reach of our act without regard to the law of the place where the employment contract was made. Likewise, whether Kennedy or plaintiff were residents of this state is immaterial. The controlling and decisive factor is that they maintained the status of employer and employee here. *Ocean Accident & Guar. Corp.* v. *Industrial Comm.,* supra; *McKesson-Fuller-Morrison Co.* v. *Ind. Comm.,* supra; *Esteves* v. *Lykes Bros. S. S. Co.* (C. C. A.) 74 F. (2d) 364; *Ginsburg* v. *Byers,* 171 Minn. 366, 214 N. W. 55; *Interstate Power Co.* v. *Industrial Comm.,* 203 Wis. 466, 234 N. W. 889; *Wandersee* v. *Indus-*

*trial Comm.*, 198 Wis. 345, 223 N. W. 837; *Ohio* v. *Chatta-nooga Boiler & Tank Co.*, 289 U. S. 439, 53 S. Ct. 663, 77 L. Ed. 1307.

Plaintiff contends that under section 42-1-52, supra, the Utah Industrial Commission could only enforce Kennedy's rights acquired by virtue of the laws of Colorado. In our opinion, that section does not require the application of the laws of a foreign jurisdiction simply because the employment contract was made there. We do not ▮▮▮ think that the Legislature, after having used the broad language it did in section 42-1-40 in defining an employer as being one who has three or more workmen in his employ under "any contract of hire," intended to limit, by section 42-1-52, the application of the act to those cases only where the contract of hire was made in this state. Such an interpretation would furnish a means of completely nullifying the force of our act by resorting to the simple expedient of making the contract of hire in some other state. We think, as did the Arizona Supreme Court in the case of *Ocean Accident & Guar. Corp.* v. *Industrial Comm.*, supra, in construing a statutory provision practically identical with section 42-1-52, that the last sentence of said section applies only to cases where both the status of employer and employee and the injury arose outside of the state of Utah. The reasoning of the Arizona court, which we think is equally applicable here, is as follows:

"There are three, and only three, cases in which the question of liability under a Compensation Act might be brought before our tribunals. In the first, the status of employer and employee would arise and the accident occur in this state; in the second, one of those events would occur in this state and one without; while in the third both events would occur out of the state. In the first case, obviously our tribunals recognize our act, and it alone, both as to procedure and benefits. In the second case, since our statute is one regulating the status, if the injury occur in the state our law governs, and under the first sentence of section 59, supra, if the status of employer and employee arises in Arizona, so far as our tribunals are concerned, it will

also govern, even though the accident occur elsewhere. This leaves uncovered by the statute only the third case, viz., when the status arises and the accident occurs both outside the jurisdiction of our forums. Such a situation has been brought before the courts many times and the decisions are varied. Bradbury's Workmen's Compensation Laws (3 Ed.) pp. 95-101, and cases cited.

"Certainly this possibility is covered by the language, 'A workman who has been hired outside of this state is injured while engaged in his employer's business.' It will be urged that the language does not expressly state the place of injury must be outside of the state. This is true, but the construction we have given it will make the act provide one and one only certain and definite compensation for each possible class of cases, while any other view would make the basis of the compensation uncertain and unequal for like injuries arising from like causes, contrary to the policy of this state. We therefore hold that the last sentence of section 59, supra, applies only to cases where the status and injury both arise outside of Arizona."

Since the Utah Compensation Act operates by reason of the status and by virtue of the inherent power of the state to regulate the relationship of employer and employee, no question concerning the rights which Kennedy might have under the laws of Colorado, because of the contract of employment having been entered into there, arises. The full faith and credit clause of the Federal Constitution (article 4, § 1), therefore, in our opinion, has no application here. *McKesson-Fuller-Morrison Co.* v. *Industrial Comm.*, supra. But even assuming that the question of comity is involved, we think the facts in this case do not warrant or require its application. In the case of *United States Fidelity & Guaranty Co.* v. *Industrial Comm.*, 99 Colo. 280, 61 P. (2d) 1033, 1035, the Colorado Supreme Court reviewed its previous decisions under the Compensation Act of that state and came to the following conclusion:

"It thus appears that to justify recovery under our law the one essential element is that a substantial portion of the work must be done in this state, but that with this must be combined either an accident in Colorado or a contract in Colorado."

So far as the record before us shows, no work was ever performed or was ever contemplated to be performed by Kennedy for plaintiff in Colorado. What work he did was all done outside that state. It would seem, therefore, under the rule of law above stated his right to invoke the Colorado Compensation Act would be doubtful if not nil.

In the case of *Alaska Packers Association* v. *Industrial Accident Comm. of Calif.*, 294 U. S. 532, 55 S. Ct. 518, 523, 79 L. Ed. 1044, Mr. Justice Stone used the following language:

"A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute, of each state must be enforced in the courts of the other but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. [Citing cases.]

"The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceeding under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight.

"The enactment of the present statute of California was within state power and infringes no constitutional provision. Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum."

The court concluded that the possibility of a remedy not being available to the injured employee under the Alaska

Compensation Act, coupled with the possibility that the employee might become a public charge of the state of California, was sufficient to show a superior governmental interest in California over that of Alaska to justify the commission and courts of California to proceed under the California law rather than the Alaska law. The case of *State* v. *Missouri Workmen's Compensation Comm.*, 339 Mo. 150, 95 S. W. (2d) 641, invokes the same principles.

In the case before us, the same considerations are present as moved the courts in the two cases just cited to apply the law of the forum. We think that the Industrial Commission was right in applying the Utah Compensation Act rather than Colorado's.

Plaintiff next contends that since Kennedy left the state of Utah and went to Colorado, he forfeited his right to compensation under section 42-1-86. However, plaintiff simply assumes that Kennedy left without the permission of the commission. The record, on the contrary, discloses that he had such permission to leave.

The commission awarded medical, hospital, and nursing expenses in a sum totaling $1,124.90. It is contended by plaintiff that the commission had no jurisdiction to award a sum in excess of $500 without the filing of an application therefor and the taking of testimony in regard thereto after due notice and an opportunity to the employer to be heard. Section 42-1-75 provides that, in addition to the compensation provided for, the employer or insurance carrier or state insurance fund shall

"in ordinary cases also be required to pay such a reasonable sum for medical, nurse and hospital services, and for medicines * * * as may be necessary to treat the patient as in the judgment of the commission may be just, not exceeding the sum of $500; provided, that if upon application to and investigation by the commission it shall find that in particular cases such an amount is insufficient, the commission shall determine and fix such a reasonable amount as under all the circumstances may be fair and just."

This section was last construed by this court in the case of *Sullivan* v. *Industrial Comm.*, 83 Utah 187, 27 P. (2d) 443, 447, in the following language:

"The commission under the statute is required * * * by it to ascertain and find whether or not the case is an ordinary case. If the commission, taking into consideration all the circumstances, finds the case to be 'particular' or extraordinary, and that, further taking into consideration all the circumstances in the particular case, the maximum allowance is not sufficient, the commission is then required to 'determine and fix such a reasonable amount as under all the circumstances shall be fair and just.' "

As to whether a case is a "particular" one, within the above section, is a matter left to the judgment of the commission and its conclusion in respect thereto will not be disturbed by us unless it appear that such conclusion is clearly erroneous. The facts in this case show that Kennedy's injuries were such that, as to medical, hospital, and nursing services, the commission might reasonably find that the case was not an ordinary one. His left arm was badly lacerated and developed gangrene. Efforts were made and treatments given to save the arm. But it became necessary to amputate at the mid-humerus. Treatments to conquer the infection were continued until May 2d, when it became necessary because of the infection to amputate at the shoulder. Kennedy's lower right leg was also badly lacerated. When released from the hospital on May 12th, the wound was still open and there was considerable contraction of the muscles in the lower leg and about the knee. It is apparent that the injuries necessitated a long period of hospitalization and close medical and nursing attention.

The doctor who attended Kennedy from February 28th to May 14th, testified as to the amount of his charge for services. It was stipulated that the itemized bill for services from the hospital might be obtained by the commission and considered in evidence. Such statement was obtained in due course and was considered by the commission. There is no

evidence in the record whatever with respect to the sum of $308.50 awarded for nursing services or the sum of $10 awarded to Dr. Le Fevre of Denver, Colo.

By his application, Kennedy sought such award and relief as he might be entitled to under the law. The expenses for medical, hospital, and nursing services, except the services of Dr. Le Fevre, were all incurred prior to the filing of the application for compensation and were definitely known at that time. Under the application, the commission could inquire into and consider the matter of making an award for the amount of such expenses already incurred. We do not think that section 42-1-75 requires that the commission have before it a special application alleging the case to be a particular one which warrants the granting of extra medical expense before it has jurisdiction to make an award in that regard. If, upon the hearing on the original application, the facts warrant such a determination, we think the commission has jurisdiction to make an award, accordingly. By the original application all are notified that the commission will hear and determine the matter of award both as to compensation and as to medical, nursing, and hospital expenses. The employer and insurance carrier know that an award for such expenses will be made and that in any case the facts and circumstances might justify and call for an award in excess of $500. In our opinion the statute does not require an applicant to file a special application with his original application or claim specially in his original application for such expenses in excess of $500. Having asked for such relief as he may be entitled to under the law, he must be considered as having applied for the amount of such expenses as it is found, under evidence presented on the hearing on such application, he should be given. Of course, if, after an award had been made, it should appear that he will require an additional amount for the expenses enumerated in said section, then he may file an application therefor.

In our opinion the record supports the award made by the commission for medical and hospital services in the sum of $250 and $556.40, respectively. There being no evidence in the record at all as to what nursing services were rendered or by whom rendered or the reasonableness of the amounts claimed therefor, the only mention thereof being in the findings and conclusions of the commission, we are of the opinion that the award covering these services cannot stand. That some such services were rendered might be assumed under the circumstances, but such assumption, however legitimate, cannot be considered evidence or obviate the requirement that there must be evidence to support the commission's findings. The same is true of the sum of $10 awarded to Dr. Le Fevre.

Plaintiff claims that the commission did not give it credit for compensation voluntarily paid from the time of the accident to August, 1935. Section 42-1-62 provides that for the loss of an arm at the shoulder an employee shall be entitled to compensation on the basis of the prescribed weekly amount for 200 weeks, in addition to the compensation provided for temporary total disability under section 42-1-61. During the time from the date of the accident to sometime in September, 1935, Kennedy was totally disabled and he would have been entitled to compensation during that time. Apparently, the commission considered what had been paid him by plaintiff as being such compensation, for no award other than the 200 weeks' compensation to which he would be entitled for loss of his arm was made. It is fair to conclude, from the record, that the amount paid by plaintiff did not exceed the amount of total temporary disability compensation to which Kennedy would have been entitled. Consequently, there was no prejudice to plaintiff in the award as made.

The record shows that it was stipulated that plaintiff had three or more employees in its employ on the date of the accident to Kennedy and that plaintiff had not procured workmen's compensation insurance to cover

its employees in Utah. Such stipulation was sufficient to support the finding that plaintiff was an employer subject to the provisions of our act.

Under section 42-1-79, R. S. 1933, upon a hearing before this court, we must enter a judgment either affirming or setting aside the award. *Cudahy Packing Co.* v. *Brown,* 61 Utah 29, 210 P. 608; *Continental Casualty Co.* v. *Industrial Comm.,* 63 Utah 59, 221 P. 852; *McGarry* v. *Industrial Comm.,* 63 Utah 81, 222 P. 592; *Aetna Life Ins. Co.* v. *Industrial Comm.,* 69 Utah 102, 252 P. 567. While, as already indicated, we are of the opinion that the award as made by the Industrial Commission is sustained by the evidence in all particulars except as to the items of $308.50 for nursing services and $10 for the services of Dr. Le Fevre, we have no power to order such items stricken, and affirm the balance of the award. Under the circumstances of this case we must either affirm or set aside the award as a whole. It might be observed that, though this court does vacate the award, this does not affect the jurisdiction of the commission to thereafter enter an award, except as it may be limited by the decision of this court in the particular case. *McGarry* v. *Industrial Comm.,* 64 Utah 592, 232 P. 1090, 39 A. L. R. 306.

Because the commission included in its award the items of $308.50 for nursing services and $10 to Dr. Le Fevre for medical services without there being any evidence in the record to sustain the awarding of such items, the award as made is annulled and set aside and the cause remanded for further proceedings in accordance with the views herein expressed. Because the award is annulled merely because of the two items above mentioned, costs are awarded to defendant Kennedy and against the plaintiff Buckingham Transportation Company.

FOLLAND, C. J., and MOFFAT, WOLFE, and LARSON, JJ., concur.