## LOS ANGELES & SALT LAKE R. CO. et al. v. PUBLIC SERVICE COMMISSION et al.

No. 7654.   Decided January 29, 1952.   (240 P. 2d 493.)

See 74 C. J. S., Railroads, sec. 402. Refiew of commission's orders. 43 Am. Jur., Public Utilities and Services, secs. 224, 225.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray* and *D. A. Alsup,* all of Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Nielsen & Conder,* and *Arthur H. Nielsen,* all of Salt Lake City, for defendants.

WADE, Justice.

Certiorari to review the decisions and amended order of the Public Service Commission. The plaintiffs were ordered to maintain their station at Black Rock, Utah, from December 1st to May 31st each year as an open agency station. They were allowed to discontinue such station as an open agency station from June 1st to November 30th of each year if they provided a caretaker during such times as the station was closed with keys to the station and telephone room who could be contacted during reasonable working hours of any regular business day by shippers or consignees or persons desiring to use the telephone to transact business with the railroad companies or to send telegraph messages through the station at Milford, Utah.

The plaintiffs applied to the Public Service Commission to allow them to discontinue their open agency station at Black Rock, except for the months of April and May of each year, because during the other ten months neither the business nor the revenue derived therefrom justified keep-

ing the station open. The revenue from other than carload shipments during the ten months was less than the cost of keeping an agent there.

Black Rock Station is situated on plaintiffs' Los Angeles main line. The nearest open agency station to the south in Delta is over 50 miles away and to the north in Milford is about 23 miles away. Black Rock is not a city or village and the only residences in the vicinity of the station, other than quarters for the railroad section hands, are the buildings on the James Ranch, which is a large cattle ranch. The Black Rock Station serves an area of approximately 500,000 acres of desolate, desert land used mostly for winter sheep grazing by about 35 sheep outfits who have permits to graze about 97,000 sheep, although of late years they have not grazed the full amount permitted. The roads leading out of Black Rock to outside communities are secondary roads which are sometimes impassable because of snow and bad weather, the winters being usually very severe. The sheep which are wintered on the west desert are brought to Black Rock in the fall and removed in the spring and the sheepmen have become accustomed to transacting their business at the station during the winter months. Black Rock has no telephonic or telegraphic means of communication with outside communities other than that provided by petitioners through its agent in its station. During the winter months, persons who had come to use the facilities of the railroads were able to do so in a heated room while waiting to transact their business of contacting and making arrangements for shipping or receiving, or while waiting for trains which seldom arrived on scheduled time.

The station at Black Rock derives a major portion of its revenue from the shipping of sheep in and out of Black Rock in range to range movements. In the spring such shipping is done during the months of April and May, when wool which is clipped at Black Rock is also shipped, and in the fall, during the months of October and November.

Other commodities usually shipped from or to Black Rock or credited to its station are a carload or two of cattle shipped each year from the James Ranch, carloads of water for the use of the sheep in the winter and in recent years volcanic ash shipped from Pumice, a non-agency point, and limestone shipped from Cruz, another non-agency point near Black Rock. During the bad winter of 1948-49 a number of carloads of hay and feed were shipped in, but this was not a usual movement. The less than carload lots of supplies and other items shipped in or out of Black Rock are very few and the revenue derived therefrom comparatively negligible, as is also the revenue derived from parcel post, express and telegraphs. The gross revenues accredited to the Black Rock Station for the years 1946-47-48 and 49 average approximately $19,000 per year. The cost of keeping an agency station including the salary of one agent, heating the station and other incidentals would be about $3800 per annum, which for four months would amount to a little over $1200.

Plaintiffs argue that the Commision failed to regularly pursue its authority because there was no substantial evidence before it that the public convenience and necessity required the maintenance of an agent at Black Rock except during the months of April and May. During the remaining ten months, the evidence discloses that the expenses are greatly in excess of the revenues collected from other than carload units. They contend that those expenses are not justified nor reasonably required for the patronage given the railroads during that time and the public's convenience and necessity will be adequately served by plaintiffs providing a phone and caretaker with keys to the depot and freight warehouse.

The Commission found that for six months during the year, that is, from June to December, the public convenience and necessity would be adequately served in the manner proposed by the plaintiffs, but because Black Rock Station is used principally as a shipping and receiving

point for the handling of sheep from December 1st to March 31st and when there is taken into consideration the business the plaintiffs get from the shipment of volcanic ash, pumice stone, and items shipped to and from the ranch, along with the increased shipping activity during the winter sheep ranging season, the public's needs required an agent at the station during that period.

The power of review of this court is limited to whether the Commission could reasonably find as it did from the evidence adduced. Sec. 76-6-16, U. C. A. 1943, ■ *Los Angeles & S. L. Ry. Co.* v. *Public Utilities Commission of Utah,* 80 Utah 455, 15 P. 2d 358; *Mulcahy* v. *Public Service Commission,* 101 Utah 245, 117 P. 2d 298.

Plaintiffs contend· that the evidence does not support the Commission's findings and conclusions since the evidence clearly proves that during these months, except for April and May, the expenses are greatly in excess of the revenues from other than carload shipments.

In determining whether the Commission acted reasonably in ordering plaintiffs to keep an open agency station in Black Rock during the winter months, both the cost-revenue factor and the reasonable service factor will be considered by this court. *Los Angeles & S. L. Ry. Co.* ■ v. *Public Utilities Commission,* supra. If the cost of maintaining an agent during the winter months is compared to the revenue received from less than carload shipments and other items such as parcel post, telegraphs, passenger fares, etc., were the only factor to be considered, there would be no doubt that the Commission acted unreasonably in ordering the plaintiffs to maintain an agent during those months. However, though the cost-revenue factor is a very important element in determining the reasonableness of the Commission's order, it is not the sole factor. Another important factor which must be considered is: Will a non-agency station reasonably serve the public desiring to use the railroad's facilities?

Plaintiffs have cited a number of cases from other jurisdictions wherein the courts have held that an order to maintain an agency station where the revenues received were largely disproportionate to the costs of sustaining such an agency was unreasonable because it showed the public had little need for such services. We have carefully read each of those cases and find that the conditions and communities being served by such stations are entirely different from those in the case at bar. For instance, the stations were situated in places where the communities had good roads connecting them with other communities and there were agency stations within a radius of approximately six to ten miles. Furthermore, the needs of these communities were easily served by buses and trucks and, as was pointed out by the court in one case, for those passengers who desired to take the trains there was a warm station in which to wait. The facts in the cases cited by petitioners, except for the cost-revenue factor, being entirely dissimilar to the instant case can be of little aid in resolving the problem here.

Each case must be determined on its own facts. The nearest agency station to Black Rock Station in one direction is more than fifty miles and in the other over twenty miles. The public which Black Rock Station serves is not a settlement or community and the people have to travel great distances from sheep camps or mines to avail themselves of the railroad's services. The winters are severe. There was evidence that the railroads themselves had requested the shippers to contact their agent as early as six weeks before shipping their sheep in the spring to make the necessary arrangements for cars so that in cases of conflict between different shippers satisfactory adjustments could be made. Many hours are consumed in making these arrangements and telephoning orders for cars under such circumstances would not be very satisfactory as trades for different times have to be made between shippers and can be more readily arranged through an agent who is

present during the business days and who can help in making such arrangements. The revenue derived from these shipments resulting from these arrangements is quite substantial. There was also evidence that the plaintiffs sold some tickets to passengers every month of the year. It is true the revenue from these are comparatively negligible and these tickets can be as easily purchased on the train; however, the inconvenience to the passenger customers does not lie in the purchasing of the tickets but in waiting in bitter cold for trains which are usually not on schedule. If an agent is maintained during these four winter months from December through March, these patrons as well as the shippers of livestock and mining products would have a warm place to wait in or conduct their business with the railroads. In view of all these facts and circumstances, the Commission could reasonably conclude that the public convenience and necessity required the services of an agent during those months.

Affirmed. Costs to defendants.

McDONOUGH, J., concurs.

WOLFE, Chief Justice.

I concur.

Protestants apparently would have no objection to the closing of this station during the winter months of November till March if the Railroad would furnish: (1) a telephone easily accessible—this the Railroad has previously offered to do, and (2) a warm place in which to wait while conducting their business by way of telephone. At the oral argument of this case before this court, counsel for the Railroad intimated that it would provide a building with the telephone and a stove in it, a supply of firewood and some coal so as to permit the sheepmen from the surrounding area to build a fire and warm themselves while using the Railroad's telephone to conduct their business. This

court does not have the authority to reverse the Commission upon evidence not presented before that tribunal. Section 76-6-16, U. C. A. 1943. But a new application timely filed might, upon a showing of these "changed conditions" result in a decision acceptable to all concerned.

HENRIOD, J., concurs in the result.

CROCKETT, Justice.

I dissent. In applying to discontinue its station at Black Rock as an agency station for ten months during the year, the railroad agreed that it would have an agent there during the time the volume of business justified, that is, during the months of April and May; that during the other ten months adequate and reasonable services would be provided by maintaining a telephone there accessible to the public which could be used to transact railroad business or for other purposes. The record shows beyond question that the revenues of the railroad from that station during the other part of the year do not justify the maintenance of the station.

The statement in the concurring opinion of Mr. Chief Justice Wolfe appear to be correct and they completely unmask the purpose of the order of the Commission which is affirmed in the prevailing opinion. It is plain to be seen that the only reason for the opposition to the closing of the station is that protestants want the agent there so that he can afford certain conveniences and courtesies to the people in the area, which are not in any way connected with the railroad business. However humanitarian it may be to provide such conveniences for sheepmen and ranchers in that locality, that is not a function nor a responsibility of the railroad. Neither is it a function of the Public Service Commission nor this court, by an adverse decision upon its right to discontinue a station, to pressure the railroad into offering to furnish such facilities.