ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. 37129.

Supreme Court of Oklahoma.

July 2, 1956.

Rehearing Denied Sept. 11, 1956.

---

John E. McCullough, St. Louis, Mo., Dan Mitchell, Enid, Emett V. Rosser, Jr., Perry, Satterfield, Franklin & Harmon, Oklahoma City, for plaintiff in error.

James Welch and Montford Johnson, Oklahoma City, for Corp. Commission.

Judge Thurman S. Hurst, Pawnee, Richard Romang, W. J. Otjen, Frank Carter and Charles Huddleston, Enid, for protestants.

JOHNSON, Chief Justice.

This case is here on appeal from an order of the Corporation Commission of Oklahoma refusing permission and authority to appellant and denying it the right to discontinue operation in Oklahoma of its passenger trains numbers 604 and 609 between the cities of Tulsa and Enid, Oklahoma.

The grounds alleged for permission to discontinue are that public necessity and convenience no longer require the continued operation of these trains at a tremendous loss to the company, which condition has existed for a sufficient period of time to determine that such condition will continue.

The substance of the Commission's finding was that the company by its charter and franchise was under an absolute duty to furnish adequate and reasonable passenger service and that the obligation could be avoided only by a showing that the rendition thereof was an undue burden or loss upon the entire system. That the only passenger service being rendered was that afforded by these trains; that there was no showing that the operation of these trains constituted an appreciable loss to the branch line or to the entire system.

The company's complaint is that the evidence does not sustain the findings nor the order and that such order would deprive it of its property without due process of law and would constitute an unauthorized burden upon Interstate Commerce.

The record discloses that trains 604–609 operate presently daily between Tulsa and Enid, Oklahoma, a distance of 121 miles, serving seventeen communities. Train 609 is the west bound train, leaving Tulsa at 8:30 a. m., and arriving at Enid at 11:55 a. m. Train 604 is the east bound train, leaving Enid at 3:20 p. m., and arriving at Tulsa at 6:35 p. m. Each train makes a scheduled stop at each of the following stations: Tulsa, West Tulsa, Keystone, Mannford, Terlton, Hallet, Casey, Pawnee, Morrison, Perry, Lucien, Covington and Enid, and flagstops at Lela, Sumner, Black Bear, Hayward and Fairmont. Of these stations, Tulsa, Enid and Pawnee have exclusive express agencies, and Mannford, Morrison, Perry, Lucien and Covington have express agencies handled on a commission basis. The equipment on each train consists of a diesel engine, a combination mail and baggage car, and an air-conditioned chair car with forty-two reclining seats. The train crew consists of an engineer, fireman, conductor, flagman and an express messenger-baggageman. The salary of the express messenger-baggageman is paid one-half by the Frisco and one-half by the express company.

The reasons given for application to discontinue service as related by a witness for the Frisco, who is traffic manager with forty-five years of passenger railroad experience, in substance, was that: The railroads, in the interest of good management, are making a determined effort to remove from service all of their unprofitable and lightly patronized trains; that a great many miles of such service have already been eliminated.

The private automobile has practically supplanted the railroad as a means of transportation over short distances, and has rendered obsolete branch line passenger train service such as the one now under review.

The railroads, including the Frisco, have had a very substantial and steady decline in passenger traffic beginning in 1920 and continuing up to the last war. This decline in rail passenger travel, which was temporarily reversed during the war years, began to repeat itself soon after the war ended. The loss of passenger traffic to the railroads is primarily due to a substantial diversion of travel to other forms of transportation.

Increased costs are another factor in the passenger operating deficits. The average straight time hourly wage paid by the Frisco in 1954 was $1.90 per hour, as compared with 70 cents in 1939. This represents an increase of 171 percent. Each one cent per hour wage increase, which affects all employees, adds nearly $400,000 to the Frisco's annual payroll.

It was shown that the Frisco tax accruals for the year 1954 were 164 percent greater than they were in 1939. Taxes imposed on the railroads go to support the general services of the Government, including schools, and the construction and maintenance of highways and airports used by competing forms of transportation, while the railroads render the public a self-supporting transportation service, and in addition pay substantial taxes which are in part used to subsidize their competitors. The discontinuance of these trains will have no effect upon the ad valorem taxes paid by the Frisco in the five Oklahoma counties served by these trains. In 1954 the Frisco paid a total of $267,447 in ad valorem taxes in Tulsa, Creek, Pawnee, Noble and Garfield Counties.

Taking into consideration all expenses, including taxes, based on system of accounts prescribed by the Interstate Commerce Commission and even including the revenue from the carriage of mail, which is not a common carrier duty, the deficit accruing from the operation of these trains during the year 1954 was approximately $138,500. In 1954 the Frisco had a deficit after all expenses and taxes in connection with the operation of these trains of $2.16 for every passenger traffic dollar taken in, compared with a deficit of only 82 cents for the railroad as a whole.

Further taking into consideration all train revenues, including mail, and only direct or out-of-pocket expenses, the Frisco would have saved approximately $37,700 if these trains had not been in operation during the year 1954. Results of operation during the first three months of 1955 indicate that the loss for the current year will be considerably greater than during 1954.

It was further shown from the federal governmental agencies' exhibits, that while in 1916 the railroads throughout the United States handled nearly 98 percent of the passenger miles in this country, in 1941 they handled only 9.8 percent, in 1952 only 6.2 percent and in 1953 only 5.5 percent of the inter-city passenger miles. Such exhibit shows that no longer are the railroads in even competition with the motor vehicle, for, in 1953, the highways handled 91.2 percent of the total inter-city passenger miles in this country. It was further shown that, in 1954, there were nearly forty-eight and one-half million passenger vehicles registered throughout the United States, which, when compared with the total population, amounted to one motor vehicle for every 3.3 persons, and that at the rate of increase there will be about fifty and one-half million passenger automobile registrations in 1955.

It was shown that the company operated its passenger service over its entire system in 1954 at a loss of $9,280,291 and within the State of Oklahoma, during the same year, at a loss of $2,766,702 on a fully distributed cost on the basis of the formula of the Interstate Commerce Commission. It was also shown that, with the exception of the war years, the Frisco's systemwide and state passenger service has been operated at an increasing annual deficit since 1936.

The evidence shows that the total deficit for the fifteen month period for the operation of trains number 604 and 609 was $225,817.51 or $2.05 per train mile.

The average per month ticket sales in Mannford in 1922 was $523 as compared with the average ticket sales in 1955 in the sum of $2. The average ticket sales per month in Pawnee in 1922 was $3,415. The average per month in 1955 was $59. Morrison in 1922 was $1,349. Average per month sales in 1955 was $43. The town of Perry average sales per month in 1922 was $3,518. The average per month ticket sales in 1955 was $84. The Lucien average per month ticket sales in 1922 was $63 and the average per month ticket sales in 1955 was $1. The town of Covington the average per month ticket sales in 1922 was $1,187. The average per month ticket sales in 1955 was $12. The town of Enid, the average per month ticket sales in 1922 was $10,840. The average per month ticket sales in 1955 was $933. Other towns served by these two trains have dropped in the same proportion or more.

It was also shown that the average number of passengers per train mile for the two trains in question was 5.8 during 1954, and only 4.7 during the first three months of 1955 out of a total population of 129,214. When these averages are compared with the five members of the crew necessary to operate the trains throughout the runs, it will be seen that there was only an average of eight-tenths of a passenger more than the number of the crew per train during all of 1954, and three-tenths less than the number of the crew during January, February and March, 1955.

These facts show without question that these trains were operated at a large deficit and that the people were patronizing busses running parallel with this branch line or used their own passenger cars

On the other hand, there were numerous witnesses (412) who testified for protestants and stated that they would at least ride these passenger trains once in the next year and also it is argued by protestants that the railroad company admittedly would use these trains and the crews on some other line of the Frisco company; and argued that because of this the company would not reduce the (deficit or) cost of operation of these trains. But this argument is without merit.

Without stating further the factual situation, it is sufficient for us to say that the facts in this case are substantially the same as established in St. Louis-San Francisco Ry. Co. v. State, Okl., 262 P.2d 168, 172. Therein we said:

"Under the factual situation in the instant case our decision herein is in line with our holding in the last named case (Frisco Case) and in accord with the modern trend of opinion, or philosophy that passenger trains are operated primarily for the carriage of passengers and if the public abandons the trains for passenger travel, there is no duty or obligation to continue their operation at a substantial loss; and in a proceeding to discontinue certain trains, the revenue, expenses and losses shown in the operation of a train have a direct bearing upon whether or not public convenience and necessity require the continued operation of any particular train."

This case was followed in the later cases of Missouri-Kansas-Texas R. Co. v. State, Okl., 266 P.2d 642, and Kansas, Oklahoma & Gulf Ry. Co. v. State, Okl., 275 P.2d 274, wherein we reversed the order of the Commission because not supported by substantial evidence.

The order herein is reversed on authority of that case, and the syllabus of that case, St. Louis-San Francisco Ry. Co. v. State, Okl., 262 P.2d 168, is adopted as the syllabus of this case, and the cause is remanded with directions to enter an order granting the application upon the terms sought.

WILLIAMS, V. C. J., and CORN, HALLEY, and JACKSON, JJ., concur.

DAVISON and BLACKBIRD, JJ., concur by reason of stare decisis.

HUNT, J., dissents.