355 P.2d 706

SALT LAKE TRANSFER COMPANY and Ashworth Transfer, Inc., Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah, and Barton Truck Line, Inc., Defendants.

UNION PACIFIC RAILROAD COMPANY, a corporation, Union Pacific Motor Freight Company, a corporation, and Consolidated Freightways, Inc., a corporation, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah, and Barton Truck Line, Inc., Defendants.

Nos. 9082, 9095.

Supreme Court of Utah.

July 26, 1960.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for Salt Lake Transfer Co. and another.

Bryan P. Leverich, Scott M. Matheson, Jr., Harold N. Wilkinson, and Sid N. Cornwall, Salt Lake City, for Union Pac. R. Co., et al.

Walter L. Budge, Atty. Gen., Raymond W. Gee, Asst. Atty. Gen., J. Reed Tuft, John G. Marshall, Salt Lake City, for defendants.

CALLISTER, Justice.

This is a consolidation of two petitions to review an order of the Public Service Commission granting the application of Barton Truck Line, Inc. to amend its certificate of convenience and necessity, No. 1127. The order increases the authority of Barton and would permit it to render local service to intermediate points between Salt Lake City and Ogden, Utah.

Plaintiffs, Union Pacific Railroad Company, Union Pacific Motor Freight Company and Consolidated Freightways, Inc., assail the Commission's order in its entirety, contending that the Commission acted arbitrarily. These plaintiffs have for many years had the authority to transport commodities generally in the area involved.

Salt Lake Transfer Company and Ashworth Transfer, Inc. assail the order of the Commission, contending that the Commission arbitrarily refused to exclude explosives from Barton's increased authority. These two plaintiffs have had authority to transport household goods, commodities requiring specialized service or equipment, explosives, and some other items.

Prior to this application, Barton held two overlapping certificates of convenience and necessity. No. 1127 authorized the transportation of commodities generally, except livestock, between Salt Lake City and

Ogden, and intermediate points, on the one hand and points west of Grantsville on the other hand. No. 1074 permits the transportation of commodities generally, including explosives, between Salt Lake City on the one hand and Tooele City and certain other points in Tooele County on the other hand.

The Commission had previously ruled that these two certificates, considered together, would not permit service by Barton between Ogden and intermediate points north of Salt Lake City limits on the one hand and points east of Grantsville, such as Tooele, on the other hand. It is conceded that the order now under review would authorize this service as well as local service between Salt Lake City and Ogden.

As previously enunciated by this Court,[1] we will not disturb the findings of the Commission if supported by substantial evidence and are reasonable in view of the evidence.

The record of the hearing before the Commission is somewhat voluminous and permits only a general characterization of the evidence presented.

Barton presented evidence relating to its present operations, equipment, facilities, and financial ability. The evidence sustains the Commission's finding that these were satisfactory.

Numerous shippers testified, in behalf of Barton's application, as to their dissatisfaction with the existing carrier facilities and to the inconvenience experienced by reason of inadequate service. Also that many shipments were damaged. Nearly all of this testimony was directed at Wasatch Fast Freight, a trade name division of Consolidated.

The results of a survey were admitted into evidence indicating that the population of Davis County was increasing more rapidly than in any other county in the state and that increased business activity could be expected.

Consolidated introduced evidence to the effect that it had recently expended a considerable amount of money in acquiring new equipment and terminal facilities for Wasatch in order to improve its services. It presented an analysis of its 1958 claim experience which indicated that Wasatch handled 144,881 shipments and received only 1.063 claims, for a 99.27 per cent claim-free record. The Commission found that, while the percentage was small, over 1,000 claims within one year indicate a somewhat unsatisfactory or inadequate service. The Commission further made a finding that there were instances of delay by Wasatch in both pickup and delivery of shipments and erroneous delivery of shipments.

1. Salt Lake-Kanab Freight Lines, Inc. v. Robinson, 9 Utah 2d 99, 339 P.2d 99; see also Sec. 54-7-16, U.C.A.1953, and cases annotated on this question.

The transportation of general commodities between Salt Lake City and Ogden, including service to intermediate points, is handled in part by Union Pacific Railroad by rail and also by its wholly-owned subsidiary, Union Pacific Motor Freight Company. The latter company operates on railroad billing and at railroad rates. Its rights are supplemental, auxiliary to, and co-ordinated with the operations of the railroad.

On December 29, 1958, the Bamberger Railroad, which for many years transported general commodities between Salt Lake City and Ogden, and intermediate points, ceased doing business and sold to Union Pacific a part of its property. Union Pacific did not, however, acquire any of Bamberger's transportation rights.

Union Pacific, while conceding it has no vested right to serve shippers formerly using Bamberger facilities, contends that it is ready, willing and able to handle the Bamberger traffic without depriving those shippers of a single day of service. It argues that there is no need for an additional motor carrier to handle the freight of Bamberger shippers, and that there is no evidence in the record that Union Pacific could not adequately serve these shippers.

If Bamberger's cessation of business were the only basis for the Commission's order, the argument of Union Pacific would have considerable merit, for as we read the record there is no evidence that Union Pacific could not adequately handle the shippers who formerly used Bamberger's services.

However, the Commission's findings are directed at the adequacy of the highway, rather than railroad, transportation. It stated in its finding No. 4:

"* * * The truckline company [Union Pacific Motor Freight] is intended to operate as a railroad service only which should not affect, any more than the former rail service affected, the adequacy or inadequacy of highway motor transportation between Salt Lake and Ogden. This fact justifies the conclusion that there is traffic formerly handled by Bamberger in excess of that which other carriers handled prior to December, 1958, and the increase in population in the Salt Lake-Ogden area with the possible future increase in business development gives weight to the suggestion that additional motor carrier service is and will be necessary in the interests of the public."

In its finding No. 13, the Commission further found:

"* * * The evidence shows instances of delay by Wasatch in both pickup and delivery of shipments and delay in processing claims resulting, in some instances, in shippers discontin-

uing the use of the Wasatch service. The evidence also shows delays in pickups until after the shippers' five o'clock closing time necessitating the holding of employees for service at overtime wages. There have been instances of erroneous delivery of shipments to persons other than consignees and difficulty by other carriers in making interline arrangements with Wasatch of Salt Lake. This general course of conduct, coupled with claims for damaged or lost shipments, undoubtedly accounts for the 1,063 claims registered with the company for the year 1958. All these facts, coupled with the retirement from the highway transportation field of Bamberger Electric, persuades the Commission that public convenience and necessity justify the issuance to applicant of the authority for which it makes application."

■ After a careful review of the record it appears that the Commission's findings, that the existing motor carrier service was inadequate and that additional service was in the public interest, are supported by substantial evidence and are reasonable in view of the evidence. However, we do not take the same view with relation to the matter of explosives.

At the hearing Barton amended its application to·exclude therefrom the transpor-

tation of household goods, commodities in connection with the transportation of which special service is required in preparing said commodities for shipment, or in setting up after delivery, which service is not regularly furnished by common carriers at regular line rates or by common carriers of specialized commodities at regularly published rates, and it also excluded commodities in bulk. This amendment excluded the commodities transported principally by Ashworth and Salt Lake Transfer, with the exception of explosives.

In the presentation of its case, Barton did not offer any evidence concerning the transportation of explosives. At the conclusion of Barton's case, Ashworth and Salt Lake Transfer moved to dismiss the application as to the transportation of explosives on the ground that there was no evidence showing any need, present or prospective, for this type of service. The Commission properly denied this motion.

■ Where, as here, there is an application to transport commodities within an accepted classification, such as "commodities generally," the applicant need not, in the first instance, demonstrate a need for the transportation of every conceivable item encompassed by the classification. A contrary view would impose an almost impossible burden upon the applicant.[2]

2. Ashworth Transfer Co. v. Public Service Comm., 2 Utah 2d 23, 268 P.2d 990.

Ashworth and Salt Lake Transfer both introduced testimony relating to their transportation of explosives between Salt Lake City and Ogden and intermediate points as well as between Hill Field and points in Tooele County. It appeared that these two carriers were highly competitive for the hauling of explosives and both claimed that the existing service was adequate. Barton offered no evidence to rebut this testimony.

At the close of the hearing, Ashworth and Salt Lake Transfer moved to exclude explosives from the amended certificate and the Commission denied the motion.

■ Realizing the limits of this court to review the orders of the Commission, nevertheless, if in relation to the facts before it, the Commission acts in an arbitrary and capricious manner, the order is without authority and must be set aside.[3] Whatever the minimum quantity and quality of evidence necessary to justify administrative action, orders issued in the complete absence of factual support are clearly arbitrary, capricious and void.

■ While in the first instance an applicant is not required to prove the need for the transportation of every item in a classification, nevertheless, when the need for the transportation of a particular item is challenged and evidence offered in a support thereof, the applicant must then introduce evidence rebutting the challenge.

■ A search of the record reveals nothing upon which to base the conclusion that the addition of Barton's services will in any way add to public convenience and necessity with regard to explosives. As the record now stands, Ashworth and Salt Lake Transfer are rendering an adequate service in the transportation of explosives. Before additional service is authorized by the Commission, the applicant must show that the existing service is not adequate and convenient and that his proposed operation would eliminate the inadequacy and inconvenience.[4]

■ There being no facts within the record to justify inclusion of explosives in the amended certificate, the order of the Commission, in this respect is arbitrary and capricious.

■ Although we express no disapproval of the order as applied to commodities other than explosives, we are empowered only to affirm or set aside the action of the Commission. It follows that we cannot modify by correcting the erroneous feature of the order, but must set it aside in its

---

3. Lake Shore Motor Coach Lines, Inc. v. Welling, 9 Utah 2d 114, 339 P.2d 1011.

4. Mulcahy v. Public Service Comm., 101 Utah 245, 117 P.2d 298, 305.

entirety.[5] This result is dictated by the wording of our statute.[6] Furthermore, it has the merit of conformity with our construction[7] of similar provisions[8] for this Court's review of Industrial Commission awards.

Order set aside. No costs awarded.

HENRIOD, J., concurs.

McDONOUGH, J., concurs in the result.

CROCKETT, Chief Justice (concurring specially).

I concur except that I do not agree that the order "must be set aside in its entirety" if this is meant to say that there must be a new proceeding and/or a complete new order made. I am aware of the authorities cited for that statement in the main opinion but see nothing therein to indicate that the point under consideration has ever been at critical issue and passed upon. I agree entirely that we should not attempt to intrude into the detail of administering the duties of the Commission. However, notwithstanding what was said in the cited case, Buckingham Transp. Co. v. Industrial Comm. et al., and other authorities, I think the proper application of the statute is that if there are severable and independent aspects of an order made by the Commission, some of which are correct and others erroneous, this court can and should affirm the correct ones and direct that the erroneous ones be corrected. See the case of State ex rel. Kansas City Terminal R. Co. v. Public Service Comm., 308 Mo. 359, 272 S.W. 957, at page 963, where the Missouri Supreme Court, under a similar statute said, where "the order * * * is separable into a number of distinct orders which are in no wise dependent upon each other * * * there can be no reason why a reviewing court should not affirm such of the orders as it finds to be lawful and reasonable, and set aside the others."

A bit of imagination will produce many examples in which requiring the court to

---

5. 73 C.J.S. Public Utilities § 64, p. 1171; California Portland Cement Co. v. Public Utilities Comm., 49 Cal.2d 171, 315 P.2d 709; Brotherhood of Railroad Trainmen v. Elgin, J. & E. R. Co., 374 Ill. 60, 28 N.E.2d 97; Brotherhood of Railroad Trainmen v. Terminal Railroad Ass'n, 379 Ill. 403, 41 N.E.2d 481; Illinois Commerce Comm. v. New York Central R. Co., 398 Ill. 11, 75 N.E.2d 411; State v. Northern Pac. Ry. Co., 229 Minn. 312, 39 N.W.2d 752; St. Louis-San Francisco Ry. Co. v. State, Okl.,

301 P.2d 228; Mountain States Tel. & Tel. Co. v. Public Service Comm., 107 Utah 502, 155 P.2d 184.

6. Sec. 54–7–16, U.C.A.1953: " * * * upon the hearing the Supreme Court shall enter judgment either affirming or setting aside the order or decision of the commission. * * *"

7. Buckingham Transp. Co. v. Industrial Comm., 93 Utah 342, 72 P.2d 1077; see also, Administrative Action in Utah, 6 Utah Law Review 406, 409.

8. Sec. 35–1–85, U.C.A.1953.

nullify an entire order because parts of it are erroneous would be folly. For instance, assume that quite a number of carriers are involved in contesting rights over numerous routes and several different classes of commodities; and that at the conclusion of an extensive hearing the Commission made an order entirely correct except as to one of the carriers, or a route or a commodity. What good reason could there be for voiding the entire order? And how much more sensible and practical it would be for the court to point out wherein the order is justified and wherein it is in error, and direct that the corrections be made.

Legislative enactments must of necessity be general and it is the responsibility of those administering the law to so interpret and apply them as to make them practical in operation in conformity with the intent and purpose for which they were enacted. The purpose of Sec. 54–7–16, U.C.A.1953, which provides that this Court shall "enter judgment either affirming or setting aside the order or decision of the commission" is simply to confer upon the Court the power to affirm actions of the Commission which appear to be correct, or to set aside those which are not, whichever it deems appropriate in the premises upon the review provided by that statute.

That this court has done so as to orders of the Public Service Commission, see Lake Shore Motor Coach Lines, Inc. v. Bennett et al., 8 Utah 2d 293, 333 P.2d 1061. In the case of Los Angeles & S. L. R. Co. v. Public Utilities Comm., 80 Utah 455, 15 P.2d 358, the court did not "affirm" or "reverse" the order of the Commission but remanded the cause for a further hearing as to whether the maintenance of a telephone at the St. John station would not satisfy the requirements of adequate service and permit the railroad to discontinue keeping its agent there for certain months of the year. In Los Angeles & Salt Lake R. Co. v. Public Service Comm., 121 Utah 209, 240 P. 2d 493, on rehearing at page 217, Utah Report, at page 355, Pacific Report, upon stipulation of counsel, this court affirmed in part and modified in part the order of the Public Service Commission.

That this court has also done so as to orders of the Industrial Commission, where the statute as to review (35–1–85, U.C.A. 1953) is identical, see the following cases: Snyder Mines, Inc. v. Industrial Comm., 117 Utah 471, 217 P.2d 560; Pacific Employers Ins. Co. et al. v. Industrial Comm., 108 Utah 123, 157 P.2d 800; Teamsters Local Union No. 222 v. Strevell-Paterson Hardware Co., 110 Utah 338, 174 P.2d 164; Campton et al. v. Industrial Comm., 1944, 106 Utah 571, 151 P.2d 189, 154 A.L.R. 691; Earley v. Industrial Comm., 1 Utah 2d 208, 265 P.2d 390.

I see no reason whatsoever that the mere fact that the statute refers to the

"order or decision" in the singular requires its meaning be so rigidly restricted as to compel striking down the entire order if any part is deemed to be erroneous. I think the sensible and practical method of performing our duty under that statute, where there are plainly severable portions of an order, is to affirm those parts of the order that are correct, and to direct the Commission to set aside those parts of the order which are inconsistent with the opinion of this Court.

WADE, J., concurs with the result of the main opinion and also the opinion of CROCKETT, C. J.

HENRIOD, Justice (commenting).

The brief held by Mr. Chief Justice CROCKETT, in his special *concurrence,* to the effect that this court previously has done more than merely *affirm or set aside* the decision of the Commission, i. e., has ordered a *modification* of its order, to me suggests 1) an unwarranted result, 2) a judicial non sequitur, 3) that we indulge in judicial legislation , and 4) represents in part a misquotation of authority, viz. Earley v. Industrial Commission, 1 Utah 2d 208, 265 P.2d 390, authored by this writer.

As to 1): The statute is clear. We can a) affirm *or* b) set aside. There is nothing in between. To say otherwise is to say the legislature didn't know what it was talking about. There is a good, substantial, sensible, practical reason why the words of the Act were used deliberately and advisedly, which readily presents itself in this very case. The applicant, Barton, may not want a modified authority. The inclusion of explosives may be the difference between a profitable or an unprofitable haul. Yet, if a modified authority were, or on any conceivable theory were, ordered by this court, Barton might be forced into a compulsory, unprofitable haul of commodities which the public could demand it be forced to continue. Obvious it is why the legislature authorized us only to set aside or affirm, in contradistinction to the authority it gave us to a) affirm, b) modify or c) vacate judgments of district courts.

As to 2): To suggest that because this court indulged in error on other occasions justifies the compounding of such error, obviously is a non sequitur and an unjudicial one. Better we correct what may have been done inadvertently than judically to fabricate a rule of law unsupported in any way by the language of the Act in question. It is significant to note that in every case cited Mr. Chief Justice CROCKETT not once indulges language justifying the split-conclusions reached. Obviously the authority we possess in appeal cases from courts as distinguished from reviews of administrative orders, which represent by far and away the greater number of matters before us, mistakenly

has been indulged in that very small fraction of matters we examine where our authority is limited only to affirming or setting aside. The only case cited by Mr. Chief Justice CROCKETT that may be said to have been subscribed by this writer is the Lake Shore case, and it must be noted that in that case it can be argued that we set aside only and did not modify anything, since by stipulation the area of authority was constricted, resulting in a mass exodus of protestants not interested in the shrunken stipulated area.

As to 3): There is no question that to advocate that "affirm or set aside" the Commission's orders means "affirm, *modify* or set aside," is to blind oneself to simple, understandable language, and would be to usurp a governmental function reserved to the legislative branch.

As to 4): A careful reading of Earley v. Industrial Commission, reflects *two separate claims,*—that of the widow, and that of the children. They are mutually exclusive. One is based on a conclusive presumption, the other is not. Our court merely interpreted a statute. To cite this case to favor the judicial abortion suggested by Mr. Chief Justice CROCKETT is more abortive than the suggestion.

This court should.be the first to admit its errors, correct them and evade any doctrine that implies validity to a continued espousal of an incorrect precept based on historic indulgence.

Mr. Chief Justice CROCKETT seems to dedicate his theory on a blind adherence to his own error in Lake Shore. I think we should admit and correct our errors.